New Jersey Bank and Trust Company v. Commissioner.
New Jersey Bank & Trust Co. v. Commissioner
Docket No. 4741-66.
United States Tax Court
T.C. Memo 1968-38; 1968 Tax Ct. Memo LEXIS 259; 27 T.C.M. (CCH) 175; T.C.M. (RIA) 68038; February 29, 1968. Filed *259 John W. Hand, 129 Market St., Paterson, N. J., and John J. White, for the petitioner. Leo A. Burgoyne, for the respondent. 176 TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in petitioner's income tax for 1961 in the amount of $12,173.52. The only issue for decision is whether petitioner may claim a loss on the demolition of a building located on a portion of a property acquired by it for the purpose of erecting a branch office. Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioner is a corporation with its principal place of business in Clifton, New Jersey, at the time of filing its petition herein. It filed its Federal income tax return for 1961 with the district director of internal revenue, Newark, New Jersey. Some time in 1959, petitioner's board of directors decided to locate a branch office in the town of Delawanna, New Jersey. The board appointed a special committee to find a suitable site. The site selected by the committee was a lot with approximate dimensions of 185 feet by 205 feet. The only structure on the lqt was a 2 1/2-story frame dwelling which, *260 because of its location, would have to be moved or removed to make room for the branch office and parking lot. The special committee recommended the purchase of the site for $46,000. Petitioner's executive committee felt that the price was excessive but was advised by a real estate operator that the house and a portion of the land, to which the house could be moved, might be sold. The executive committee was aware that a zoning variance would have to be obtained and that a buyer had to be located. On January 19, 1960, petitioner's board of directors had authorized an application for permission to establish a branch office at the proposed site. On June 23, 1960, petitioner acquired the proposed site for a total cost of $46,421.63. On October 11, 1960, the board accepted an offer to acquire a 40-foot by 205-foot section of petitioner's lot, together with the house, which was to be moved to a position partly on the 40-foot section and partly on a 10-foot strip of the adjoining land already owned by the prospective buyer. The contract, entered into on November 28, 1960, stated a price of $15,000 and was contingent on obtaining the approval of the zoning board to a subdivision of the *261 petitioner's property and the adjoining property in order to accommodate the moved house. On February 2, 1961, the zoning board denied approval of the plan to subdivide. Petitioner made no further effort to sell the house or any part of its lot, and, on or about April 1, 1961, petitioner demolished the house at a cost of $1,380. Based on the demolition cost and what petitioner determined to be the basis of the house, it claimed a demolition loss on its return of $24,885.82. Respondent determined that no loss was allowable and that the entire acquisition price and the cost of demolition constituted petitioner's basis in the land. Petitioner and respondent now agree that if petitioner sustains its burden of proving a demolition loss, it shall be in the amount of $13,064.19. After the demolition, petitioner erected a branch office on the site. The 40-foot strip is not now used by the bank, except for decorative purposes. Opinion Petitioner claims that it acquired the site with the intention of using a part for its branch office, moving the house to the 40-foot strip on the north side, and selling the house and the strip. Several months after the acquisition, petitioner in fact *262 found a prospective buyer in an adjoining landowner but was unable to get the necessary approval of the zoning board. Respondent, on the other hand, contends that petitioner's sole purpose was to acquire the site for a branch office and that the manner of dealing with the house was incidental and inconsequential. We agree with respondent. The record is clear that petitioner acquired the site in question, knowing that the house would have to be moved or removed to make room for the proposed branch office. One of petitioner's officers testified that the executive committee would not have acquired the site unless the house could be moved to the 40-foot strip and sold. However, no minutes reflect this attitude. Against this testimony are the following circumstances: (a) Petitioner knew, at the time it proposed to acquire the site, that special permission for subdividing would have to be obtained from the zoning board before the house could be moved and sold. Nevertheless it made no attempt to condition its purchase of the site on obtaining such permission or even to check in advance on the 177 likelihood that such permission would be granted. (b) There is no evidence that petitioner *263 had other sites under consideration as a hedge against possible failure to sell the house. (c) Except for a general statement that the house was habitable at the time of its acquisition by the bank, there is nothing in the record to indicate the age or condition of the house. (d) There is no evidence that the petitioner made any effort to sell the house and 40-foot strip prior to receiving the ill-fated offer in October 1960. Even after that proposed sale fell through, petitioner made no effort to find another purchaser for the house without any land. [1]
We think that at best petitioner's state of mind at the time of the site acquisition as to the possible sale of the house and accompanying strip was the same as that of a person who orders raw oysters in a restaurant with respect to the possibility of finding a pearl. Petitoner has failed to prove that it is not subject to the well-settled rule that, where property is purchased with the intent to remove the buildings thereon and either erect a new *264 building or use the property without improvements, the removal of the buildings does not give rise to a deductible loss. ; cf. (C.A. 6, 1967); ; , affirmed on other issues (C.A. 9, 1965). Decision will be entered for the respondent. Footnotes
1. The real estate operator who allegedly advised petitioner at the time the site acquisition was authorized was available to testify but petitioner did not see fit to call him.↩